UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DENICE A. FREDERICK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:24-cv-00367-SRC |
| | ) |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA, | ) |
| | ) |
|     Defendant. | |

**Memorandum and Order**

In early 2023, Life Insurance Company of North America (LINA) denied Denice Frederick's claim for disability benefits under an ERISA-governed plan. She appealed that decision in January 2024, but by mid-March 2024, she had not received a decision. So, she sued LINA. Now, LINA moves for summary judgment and Frederick moves to determine the scope of the administrative record. As explained below, the Court grants LINA's motion and denies Frederick's motion.

**I.    Background**

The Court finds the following facts undisputed for purposes of summary judgment, most of which the parties agree are undisputed. The Court notes below the facts that the parties dispute.

Frederick seeks long-term disability benefits under "an employee welfare benefit plan." Doc. 25 at 1–2.[1] An insurance policy allows a Waste Connections employee to submit a claim for disability benefits and to appeal the denial of a benefits claim. Doc. 22-2 at 4, 13, 26–27.

---

[1] The Court cites to page numbers as assigned by CM/ECF.

LINA is "the named fiduciary for deciding claims for benefits" and "appeals of denied claims." *Id.* at 4, 26.

Frederick followed this claims procedure: she submitted a claim for disability benefits, LINA denied it, and Frederick appealed. *Id.* at 30, 42. After several extensions of time to file her appeal, she faxed it to LINA on January 14, 2024. *Id.* at 35–42; doc. 29 at 3. LINA received this fax, constituting Frederick's written appeal. Doc. 22-2 at 42–46.

The parties disagree on when LINA received the fax. Frederick claims that LINA received the fax on January 14, 2024, whereas LINA claims that it received the fax on January 15, 2024. Doc. 29 at 1–2. In support of their arguments, both parties have submitted a copy of a printout from their respective fax machines. Doc. 22-2 at 42; doc. 25-1 at 3.

LINA's printout includes a header containing a date, a notation of "00:09," and phone numbers:

```
15-Jan-2024  00:09    To: +18664723221                    From: +13148767877    p.1
```

Doc. 22-2 at 42. The parties agree only that the header "shows that [the fax] was not received by" LINA "until January 15, 2024." Doc. 32 at ¶ 7. The parties do not agree that LINA received the fax on January 15, 2024. *See id.*

On the other hand, Frederick's printout includes a date, a time, and a description stating that the fax was successful:

```
                                                                    Sunday, January 14
(AO)  Davis Olszeski, LLP (Adam Olszeski)  6:09 PM
      🖨 Fax
         Status: success
```

2

Doc. 25-1 at 3.  In addition, Frederick's counsel explained in an affidavit that he "received confirmation from [his] Fax system that" the "fax was successfully delivered on January 14, 2024 at 6:09 pm."  Doc. 25-1 at ¶¶ 1–2 (citing doc. 25-1 at 3).  In addition, based on this affidavit and the printout, the Court may reasonably infer that Frederick's counsel's fax system contains a mechanism to notify a sender that the recipient has received the fax, the printout relates to Frederick's appeal, and the printout documents that the recipient received the fax on January 14, 2024, at 6:09 p.m.  *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).

The evidence that Frederick has submitted establishes that LINA received Frederick's appeal on January 14, 2024.  Doc. 25-1 at 1, 3.  But LINA has not submitted any evidence to rebut that evidence.  *See* doc. 29 at 1–2.  For example, LINA has not submitted any affidavits or declarations explaining what its printout means, affirming that its fax machine worked properly on the relevant days, or attesting to the date LINA received the appeal.  *See id.*  Accordingly, the Court finds that the unrebutted evidence establishes that LINA received Frederick's appeal on January 14, 2024.  *See* Fed. R. Civ. P. 56(e)(2).

When Frederick faxed her appeal, she did not provide any supporting documents or evidence, stating instead that she would provide additional information at a later time.  *See* doc. 22-2 at 42.  She did so less than a week later, providing, among other things, medical records that allegedly show that she suffers from fibromyalgia, cervical fusions, and syncopal episodes.  *Id.* at 43–44.  On January 26, 2024, a representative of LINA left a voicemail on Frederick's counsel's phone about gathering initial appeal information.  *Id.* at 100.  LINA then sent Frederick a letter indicating that it needed more information—Frederick's file from her award of Social Security Disability Insurance benefits from the Social Security Administration and Frederick's consent to obtain it—and asking her to send the information to LINA.  *Id.* at 47.

LINA explained that this file would allow it to review the records related to the award and give LINA the ability to appropriately consider the award in its evaluation of Frederick's appeal. *Id.* at 47–48. Further, LINA explained that it needed the file to determine Frederick's functional ability and whether she satisfies the plan's definition of "disability." *Id.* at 48.

The letter also explained that obtaining this file would affect the timing of its decision on Frederick's appeal. "Ordinarily, [LINA] would make a determination on [Frederick's] appeal within 45 days from the date [it] received [her] initial request for appeal, subject to extension for special circumstances," the letter stated. *Id.* The letter further stated that, "based on [Frederick's] request and [its] agreement, [LINA's] time to decide the appeal is tolled from the date of this letter through the date [LINA] receive[s] the information." *Id.* The letter then explained that the "number of days from the date of [the] letter until the toll is ended . . . do not count toward the number of days" LINA would have to issue a decision. *Id.* Finally, the letter explained that once the tolling stopped and the deadline to decide resumed, LINA would "proceed with making its appeal decision within a reasonable period of time not to exceed the number of decision making days that are left after tolling ended, including extension for special circumstances." *Id.*

Five days later, Frederick submitted the requested file. *Id.* at 49, 51. LINA claims that Frederick did not submit all the requested documents but concedes that whether Frederick submitted all the documents is irrelevant to its motion. Doc. 29 at 3. On February 1, 2024, LINA sent Frederick's medical file for review by a third-party medical-professional vendor. Doc. 22-2 at 53–59. Later that month, LINA received a peer-review report from a psychiatrist, but it did not receive an internal medicine/occupational medicine report. *Id.* at 60–72.

4

On February 28, 2024, Frederick sent LINA a letter claiming that Life Insurance had violated 29 C.F.R. § 2560.503-1(i)(3) because it had not decided Frederick's appeal by the deadline, which Frederick claimed was February 28, 2024. *Id.* at 73. The letter also requested an explanation for LINA's violation and why the violation should not cause Frederick's administrative remedies to be deemed exhausted. *Id.*

Frederick asserts that LINA did not respond to this letter within 10 days. Doc. 29 at 6. LINA disputes that assertion, arguing that it sent Frederick a letter notifying her that LINA needed a 45-day extension and that Frederick's letter requested an explanation of an alleged violation that had not occurred. *Id.* The Court finds the following facts based on LINA's February 29, 2024 letter. On February 29, 2024, LINA sent Frederick a letter stating that it needed "an extension of up to 45 days, to April 14, 2024[,] to make a decision on" the appeal. Doc. 22-2 at 74. LINA wrote that it needed "this extension because of the following circumstances or unresolved issues": it was having Frederick's "claim file reviewed by a medical professional," which "is needed to evaluate [Frederick's] functional ability and whether [she] satisfies the definition of disability as defined under the policy." *Id.* In addition, LINA stated that it "expect[ed] to make [its] appeal decision within 45 days from March 03, 2024." *Id.* When viewed in the context of Frederick's letter—which she had sent only one day prior— LINA's letter extends its deadline by 45 days and thus by implication responds to her inquiry regarding exhaustion of administrative remedies. *See id.* at 73–74. Thus, the Court finds as a fact that LINA responded to Frederick's letter within 10 days. Doc. 29 at 6.

Further, Frederick claims, and LINA disputes, that the February 29 letter "stated . . . that the 45-day deadline to return [a] decision on the January 14, 2024 – after the conclusion of the 'tolling period' – was March 3, 2024." Doc. 29 at 5 (citing doc. 22-2 at 74). Upon review of the

5

letter, the Court finds that it does not support Frederick's claim—it mentions neither January 14, 2024, nor "the conclusion of the 'tolling period.'" Doc. 29 at 5; doc. 22-2 at 74.

Shortly after receiving the February 29 letter, Frederick filed this case asserting ERISA claims under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3) for benefits due and breach of fiduciary duty. *See* doc. 1. At the time Frederick did so, LINA had not issued a decision on Frederick's appeal. Doc. 32 at ¶ 17.

In its internal documents, LINA documented, among other things, that (1) it received Frederick's appeal on January 15, 2024, (2) it sent a letter acknowledging "mutual tolling," (3) tolling occurred between January 26, 2024, and, January 31, 2024, and (4) it sent an appeal status letter on February 29, 2024 that addressed an extension. Doc. 22-2 at 90.

**II.     Standard**

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor*, 826 F.2d at 734.

The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without

6

support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Further, to determine whether the disputed facts are material, courts "examine the evidence in the context of the legal issues involved." *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017, 1021 (8th Cir. 1997). The existence of disputed facts alone does not prevent summary judgment. *Id*. Rather, "the dispute[s] must be outcome determinative under prevailing law." *Id*. (alteration in original) (quoting *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir. 1989)).

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Discussion**

LINA moves for summary judgment on Frederick's benefits-due and breach-of-fiduciary-duty claims. The Court considers both claims below.

    **A.    Benefits-due claim**

LINA argues that the Court should grant summary judgment on the benefits-due claim because Frederick failed to exhaust her administrative remedies before seeking judicial intervention. Docs. 20–21, 28. Frederick disagrees, arguing that she exhausted her administrative remedies when LINA failed to render a timely decision on her appeal. Doc. 24.

"ERISA does not contain an express requirement that employees exhaust contractual remedies prior to bringing suit." *Wert v. Liberty Life Assurance Co. of Boston, Inc.*, 447 F.3d 1060, 1062 (8th Cir. 2006) (citing *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994)). But the Eighth Circuit has "recognized a judicially created exhaustion requirement under

ERISA . . . when there is available to a claimant a contractual review procedure that" complies "with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f) and (g)." *Id.* at 1063. Under this exhaustion requirement, a claimant must exhaust her contractual remedies before filing an ERISA suit. *Id.* This exhaustion requirement applies to Frederick's claim because the relevant plan includes appeal procedures, doc. 22-2 at 26–27; doc. 25 at ¶ 3, and the parties do not dispute that the contractual review procedure complies with section 1133 and section 2560.503-1(f) and (g), *see* docs. 21, 24, 28.

"In the case of a claim for disability benefits," such as this one, a claimant's administrative remedies are deemed exhausted "if the plan fail[ed] to strictly adhere to all the requirements of [section 2560.503-1] with respect to a claim." 29 C.F.R. § 2560.503-1(l)(2)(i) (2020). A claimant's administrative remedies are not deemed exhausted, however, if section 2560.503-1(l)(2)(ii)'s *de minimis*-violation exception applies. 29 C.F.R. § 2560.503-1(l)(2)(i)–(ii).

One requirement that a plan must strictly adhere to is the time frame that section 2560.503-1(i) delineates for a plan to decide an appeal. It provides that a plan must decide a disability-benefits appeal "within a reasonable period of time, but not later than" 45 days "after receipt of the claimant's request for review by the plan." 29 C.F.R. §§ 2560.503-1(i)(1)(i), (i)(3). This deadline may be extended by 45 days in special circumstances but "[i]n no event shall such extension exceed a period of" 45 days "from the end of the initial period." *Id.*

Frederick asserts that her administrative remedies were deemed exhausted because LINA did not timely decide her appeal. Doc. 24. Below, the Court considers (i) whether LINA invoked an extension under section 2560.503-1(i)(1)(i) and (i)(3); (ii) whether LINA's deadline

8

was tolled under section 2560.503-1(i)(4) at any point; and (iii) in light of New York's deadline to decide Frederick's appeal, whether Frederick exhausted her administrative remedies before filing this case.

### i. Special-circumstances extension

Under section 2560.503-1(i)(1)(i) and (i)(3), a plan administrator may extend its deadline to decide a disability-benefits appeal by 45 days under "special circumstances":

> [T]he plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period. . . . The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

In other words, the plan administrator may extend its deadline by 45 days if (1) it determines that special circumstances require an extension of time; (2) it furnishes written notice of the extension before the initial 45-day period expires; (3) the written notice indicates the special circumstances that require an extension of time; and (4) the written notice indicates the date by which the plan administrator expects to render a decision. 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3). "[S]pecial circumstances" include, but are not limited to, "the need to hold a hearing, if the plan's procedures provide for a hearing," and "a claimant's failure to submit information necessary to decide" an appeal. 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3)–(4).

LINA complied with these requirements. LINA sent Frederick a letter on January 26 that demonstrates that LINA had determined that special circumstances existed, namely that LINA

needed additional information from Frederick and the Social Security Administration before it could decide Frederick's appeal:

> Our file indicates that your client has been awarded Social Security Disability Insurance (SSDI) benefits from the Social Security Administration (SSA). To ensure that your client's LTD file includes the decision rationale, Consultative Exams, Continuing Disability Reviews and/or any medical records utilized by the SSA, we will request your client's SSDI file from the SSA. In order to obtain this information, we need from your client a signed SSA Consent for Release of Information. Please have your client sign and return the enclosed SSA Form 3288 to the return address provided as soon as possible. To expedite the processing of your client's appeal, please fax the authorization to my attention at 866.472.3221[.]
>
> Gathering your client's SSDI file will allow us the opportunity to review the SSA records related to your client's SSDI award, and to give appropriate consideration to the award in our evaluation of your client's appeal. Please note that if you will not authorize us to obtain your client's SSDI file, or you fail to timely respond to our request for the SSA authorization, we will not be able to review your client's SSA records or give appropriate weight to the award in our evaluation.
>
> . . .
>
> This information is needed in order to determine your client's functional ability, and whether your client satisfies the Definition of Disability as defined under your client's contract.

Doc. 22-2 at 47–48. Further, the letter indicated that LINA's time to decide would include an extension for special circumstances and when LINA expected to make a decision:

> The number of days from the date of this letter until the toll is ended (in one of the ways described above) do not count toward the number of days we are allowed to make an appeal decision. Once tolling stops and the counting of days to our decision deadline resumes, LINA Group Benefit Solutions will proceed with making its appeal decision within a reasonable period of time not to exceed the number of decision making days that are left after tolling ended, *including extension for special circumstances*.

*Id.* at 48 (emphasis added).  Finally, this letter plainly constitutes written notice of the extension.  Thus, based on the letter's content, the Court concludes that the January 26 letter invoked the 45-day extension for special circumstances under section 2560.503-1(i)(1)(i) and (i)(3).

### ii. Tolling

Before calculating LINA's deadline, the Court must also consider whether LINA's deadline was tolled at any point under section 2560.503-1(i)(4).  Doc. 21 at 3 (arguing that the January 26 letter tolled LINA deadline under section 2560.503-1(i)(4)); doc. 24 at 6 (arguing that the letter invokes an impermissible tolling period).

Section 2560.503-1(i)(4) allows tolling in limited circumstances:

> **(4) *Calculating time periods.*** . . . *In the event* that a period of time is extended as permitted pursuant to paragraph (i)(1), (i)(2)(iii)(B), or (i)(3) of this section *due to* a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information.

29 C.F.R. § 2560.503-1(i)(4) (emphases added).  In other words, tolling occurs only if (1) the plan administrator extended its initial 45-day deadline under paragraph (i)(1), (i)(2)(iii)(B), or (i)(3), and (2) the plan administrator premised that extension on the claimant's failure to submit information necessary to decide a claim.  *Id.*

As explained above, the January 26 letter invoked the special-circumstances extension under section 2560.503-1(i)(1)(i) and (i)(3).  *See supra*.  And it did so based on LINA's need for additional information from Frederick.  *Id.*  Thus, the January 26 letter satisfied the requirements for tolling under section 2560.503-1(i)(4).  As a result, LINA's deadline to decide Frederick's appeal was tolled from "the date on which the notification of the extension" was sent to Frederick (January 26, 2024) "until the date on which" she responded "to the request for

11

additional information" (January 31, 2024). *Id.*; doc. 22-2 at 22, 47. The January 26 letter therefore tolled LINA's deadline for five days.

### iii. LINA's deadline to decide Frederick's appeal and whether Frederick exhausted her administrative remedies before filing this case

LINA initially had 45 days from the date it received Frederick's appeal (January 14, 2024) to issue its decision, 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3); *see supra* section (I), which made its initial deadline February 28, 2024. LINA extended this deadline by 45 days, *see supra* section (III)(i), and benefited from five days of tolling, *see supra* section (III)(ii). As a result of the extension and tolling, LINA's deadline to decide Frederick's appeal was April 18, 2024.

Frederick filed this case on March 11, 2024, over a month before LINA's deadline. Doc. 1. When she did so, LINA had not yet issued a decision. Thus, the Court holds that Frederick failed to exhaust her administrative remedies before seeking judicial intervention on her benefits-due claim and grants LINA summary judgment on Frederick's benefits-due claim.

The Court also notes that the parties dispute the legal effect of LINA's February 29 letter to Frederick. Doc. 24 at 8–9. Under Frederick's theory, LINA sent that letter a day after its deadline to decide her appeal, it does not constitute a response to her February 28 letter, LINA's letter failed to identify sufficient special circumstances that warranted an extension, and the day-late letter does not qualify as a special-circumstances extension or for the *de minimis*-violation exception set forth in section 2560.503-1(l)(2)(ii). Doc. 24 at 8–9. Her theory raises many questions, including: What standard governs a district court's review of a plan administrator's determination that special circumstances exist for an extension? If a plan administrator fails to timely decide a claimant's appeal, does a one-day-late letter regarding a permissible extension cause the claimant prejudice? Can a plan administrator's miscalculation of its deadline constitute 'good cause' under the *de minimis*-violation exception? And is a third

12

party's review of a medical record a "matter[] beyond the control of the plan"? 29 C.F.R. § 2560.503-1(l)(2)(ii).  In light of the Court's conclusions above, it need not reach these questions.

Similarly, the Court notes that since Frederick filed this case, LINA has issued a decision on her appeal.  Doc. 22-2 at 102–09.  Frederick has not sought leave to amend her complaint in the event that the Court grants LINA's motion for summary judgment.  Thus, the Court need not consider at this time whether she can obtain leave to amend.

### B.    Breach-of-fiduciary-duty claim

LINA also moves for summary judgment on Frederick's breach-of-fiduciary-duty claim under 29 U.S.C. § 1132(a)(3), arguing that Frederick failed to exhaust her administrative remedies before seeking judicial intervention and that "the uncontroverted facts show that [Frederick] cannot prevail."  Docs. 20, 28; doc. 21 at 9.

Under section 1132(a)(3), a plan participant may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  Frederick's section 1132(a)(3) claim raises alleged violations of LINA's fiduciary duties set forth in 29 U.S.C. § 1104, specifically its duties of loyalty and prudence.  Doc. 1 at ¶¶ 37–49.  Frederick alleges that LINA breached these duties when it failed to timely communicate its appeal decision; failed to respond to Frederick's February 28 letter, which addressed Frederick's belief that LINA had not rendered a timely appeal; and failed to implement proper claims procedures.  *Id.* at ¶ 45.

The undisputed facts, however, do not support Frederick's allegations.  As explained above, the undisputed facts demonstrate that LINA has not violated the claim procedures set

13

forth in section 2560.503-1.  *See supra*.  Frederick's February 28 letter therefore did not identify a violation that required an explanation from New York Life.  *See* 29 C.F.R. § 2560.503-1(l)(2)(ii) ("The claimant may request a written explanation of the violation from the plan, and the plan must provide such explanation within 10 days . . . .").  And no evidence in the record suggests that New York Life implemented improper claims procedures.  Accordingly, the Court grants New York Life summary judgment on Frederick's breach-of-fiduciary-duty claim.

## IV.  Conclusion

For these reasons, the Court grants New York Life's [20] Motion for Summary Judgment and denies as moot Frederick's [16] Motion to Determine Scope of Administrative Record and the parties' [33] Joint Motion for Additional Time and/or Amendment to Scheduling Order.  A separate judgment accompanies this Memorandum and Order.

So ordered this 10th day of January 2025.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE